UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOSEPHJ ZIMMERMAN, individually and As Trustee of the ZIMMERMAN FAMILY TRUST 1994,<br><br>Plaintiff(s),<br><br>v.<br><br>PENN-STAR INSURANCE COMPANY,<br><br>Defendant(s). | Case No.2:22-CV-1174  JCM (MDC)<br><br>ORDER |

Presently before the court is defendant Penn-Star Insurance Company ("Penn-Star")'s motion for summary judgment. (ECF No. 25). Plaintiff Joseph Zimmerman ("Zimmerman") filed a response (ECF No. 33), to which Penn-Star replied (ECF No. 35).

Also before the court is Zimmerman's motion for partial summary judgment. (ECF No. 26). Penn-Star filed a response (ECF No. 36), to which Zimmerman replied (ECF No. 39).

**I.   Background**

This case arises out of an incident wherein the outdoor air conditioning units at a property owned by Zimmerman were broken into and their copper wiring stolen.

Prior to the incident, Penn-Star insured a large building comprised of three suites owned by Zimmerman on East Sahara Avenue in Las Vegas.  (ECF No. 1-1 at 2).  Zimmerman leased these suites to two separate tenants.  (*Id.*).  On December 24, 2021, one of the tenants discovered that multiple heating, ventilating, and air conditioning ("HVAC") units on the roof of the property

had been destroyed. (*Id.* at 2-3). The tenant subsequently filed an incident report with the Las Vegas Metropolitan Police Department. (*Id.* at 3).

Zimmerman alleges that that the HVAC units constituted fixtures and that the loss occurred while the policy issued by Penn-Star was in full force and effect. (*Id.*). When submitting his claim to Penn-Star, Zimmerman included pictures of the destroyed HVAC units and stated that they were vandalized in "a targeted hit by people distraught at our tenant (a church that deals with vagrant and displaced people)." (*Id.*). A contractor hired by Zimmerman found examples of copper wires being cut, but not stolen, prompting Zimmerman to argue that the loss was a "vandalism loss" and not a "theft loss."

The insurance policy expressly covers "[v]andalism, meaning willful and malicious damage to, or destruction of, the described property." (*Id.* at 4). The policy defines the term "building" as "the building or structure described in the [d]eclarations, including . . . outdoor fixtures." (*Id.*). While the policy's vandalism coverage provision has an exception for theft, which is not covered, that exception still extends coverage for "building damage caused by the breaking in or exiting of burglars." (*Id.*).

On January 20, 2022, Penn-Star denied coverage for the loss and the claim, contending that "theft or damage because of theft are not covered causes of loss." (*Id.*).

Zimmerman filed his complaint and asserted claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) violation of Nevada's Fair Claims Practices Act. (*Id.* at 5-11).

Penn-Star moves for summary judgment on all three claims. Conversely, Zimmerman moves for partial summary judgment on his breach of contract claim, arguing that the policy favors coverage.

- 2 -

The court grants Penn-Star's motion for summary judgment regarding Zimmerman's claims for breach of the implied covenant of good faith and fair dealing and violation of Nevada's Fair Claims Practices Act. The court denies both parties' motions as to the breach of contract claim due to the ambiguity of the policy language and lack of binding case law, in addition to a dearth of facts in discovery that would assist the court in interpreting the policy.

## II.   Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id*.

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id*.

By contrast, when the non-moving party bears the burden of proving the claim or defense,

the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the

nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

The Ninth Circuit has held that information contained in an inadmissible form may still be considered for summary judgment if the information itself would be admissible at trial. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)) ("[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule of Civil Procedure 56.").

### III. Discussion

#### A. Breach of contract

Both parties move for summary judgment on Zimmerman's breach of contract claim against Penn-Star.

"A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) (citation omitted). To prevail on a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a valid contract; (2) that the plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages. *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2001); *see also Sierra Dev. Co. v Chartwell Advisory Group, Ltd.*, 223 F. Supp. 3d 1098, 1103 (D. Nev. 2016).

The court is tasked with determining whether the incident was a theft or vandalism, as the former would trigger the theft exclusion provided by the policy. The facts provided by the parties are conflicting. And disputed.

In its motion, Penn-Star cites *Certain Underwriters at Lloyds, London v. Law*, 570 F.3d

574 (5th Cir. 2009) to support its denial of coverage. In *Law*, a case with almost identical facts to the instant matter, the insurer denied coverage resulting from the theft of copper tubing from commercial air conditioning units wherein the policy covered vandalism and not theft. *See generally id*. The Fifth Circuit held that denial of coverage was proper, concluding that the damage "resulted from neither vandalism nor the breaking into or exiting of the insured building by burglars" but "was caused by or resulted from acts of theft." *Id.* at 583.

Here, James Overton ("Overton"), an insurance adjuster, inspected the damage at the property and found that "[o]n four units, components including all of the copper tubing had been removed. Wiring from the power sources to the individual units had also been removed." (ECF No. 25-6 at 4). Overton's report also indicated that the HVAC units had been disassembled for the purpose of accessing the copper wiring, thereby leading to the conclusion that this act was a theft as opposed to vandalism. (*Id.*).

Furthermore, the police report classified the incident as grand larceny. (ECF No. 25-4 at 3). As Penn-Star aptly posits, Zimmerman himself admitted in his deposition that copper wiring and tubing had been *removed* from the units. (ECF No. 25-5 at 13-14) (emphasis added).

However, Penn-Star fails to address the theft exception in the policy, which states that there is no coverage for "loss or damage caused by or resulting from theft, *except for building damage caused by the breaking in or exiting of burglars*." (ECF No. 26-1 at 89) (emphasis added). The policy defines "building" as including "outdoor fixtures." (*Id.* at 58).

Whether the HVAC units constitute fixtures is disputed. In Nevada, a real estate fixture is an object permanently affixed or fastened to a property with the owner having no intention of removing it. *See Brown v. Lillie*, 6 Nev. 244, 251 (1870). There is no way for the court to determine the intent of the owner regarding whether these fixtures were to remain affixed to the

property in perpetuity. Although Overton admitted in his deposition that the HVAC units involved in the loss were "outdoor fixtures to the building," this statement is not dispositive, as Overton is not an employee of Penn-Star and did not draft the policy. (ECF No. 26-8 at 7).

When viewed in totality with the police report, case law cited by the parties, and Overton's deposition, the question of whether the HVAC units are outdoor fixtures remains unresolved. Accordingly, summary judgment for breach of contract is not appropriate. The court denies Penn-Star's motion for summary judgment as to Zimmerman's breach of contract claim and Zimmerman's motion for partial summary judgment on his breach of contract claim.

B. <u>Breach of the implied covenant of good faith and fair dealing and fair claims practice act</u>

Zimmerman asserts two more causes of action against Penn-Star in addition to his breach of contract claim: (1) breach of the implied covenant of good faith and fair dealing and (2) violations of Nevada's fair claims settlement practices act.

To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege (1) plaintiff and defendant were parties to a contract; (2) defendant owed a duty of good faith the plaintiff; (3) defendant breached that duty by performing in a manner that was unfaithful to the purpose of the contract; and (4) plaintiff's justified expectations were denied. *See Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).

A contractual breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Id.*; *see Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 2d 1222, 1252 (D. Nev. 2016).

Nevada Revised Statute 686, concerning unfair claims settlement practices, outlines sixteen provisions that constitute an "unfair practice," all of which relate to misrepresentations and

bad-faith actions on the part of insurers. NRS 686A.310. To proceed under the act, the plaintiff must prove that the defendant acted unreasonably in violation of one or more of the provisions of the act. *See, e.g., Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010).

The court grants Penn-Star's motion for summary judgment as to these two claims. Although Zimmerman avers that Penn-Star failed to conduct a prompt and fair investigation into this matter, there is nothing in the record to indicate that Penn-Star acted in bad faith.

The court concurs with Penn-Star's argument that it had a reasonable basis for concluding that the incident at issue was a theft, thus warranting denial of coverage. The police report classified the incident as grand larceny, as opposed to vandalism. (ECF No. 25-4 at 3). As stated, *supra*, Overton concluded that the issue was a theft and that the HVAC units had been disassembled for the purpose of accessing the copper wiring. (ECF No. 25-6 at 4). To cinch the matter, Penn-Star's denial letter requested that Zimmerman furnish any information that would indicate the loss was not a theft. (ECF No. 25-2 at 3). Zimmerman failed to do so. Summary judgment as to these two claims is therefore appropriate.

**IV.     Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Penn-Star Insurance Company's motion for summary judgment (ECF No. 25) be, and the same hereby is, GRANTED IN PART and DENIED IN PART.

Penn-Star's motion for summary judgment is GRANTED as to plaintiff's claims for (1) breach of the implied covenant of good faith and fair dealing and (2) violation of Nevada's Fair Clams Practices Act. The motion is DENIED as to plaintiff's claim for breach of contract.

1      IT IS FURTHER ORDERED that plaintiff Joseph Zimmerman's motion for partial summary judgment (ECF No. 26) be, and the same hereby is, DENIED.

DATED July 12, 2024.

_____
UNITED STATES DISTRICT JUDGE